UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP POWELL, JR.,

      Petitioner,     Case Number 2:13-CV-14742
                 Honorable Marianne O. Battani

SHERRY BURT,

      Respondent.
_____/

**<u>OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION FOR SUMMARY
JUDGMENT [dkt. 14], (2) DISMISSING THE PETITION FOR WRIT OF HABEAS
CORPUS,(3) DENYING A CERTIFICATE OF APPEALABILITY AND PERMISSION
TO PROCEED IN FORMA PAUPERIS ON APPEAL, AND (4) DENYING
PETITIONER'S MOTION TO EXPAND THE RECORD [dkt. 17]</u>**

Phillip Powell ("Petitioner"), a prisoner in the custody of the Michigan Department

of Corrections, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner challenges his Macomb Circuit Court convictions of one count of first-degree

home invasion, MICH. COMP. LAWS § 750.110a(2), three counts of first-degree criminal

sexual conduct, MICH. COMP. LAWS § 750.520b(1)(f)), and one count of second-degree

criminal sexual conduct. MICH. COMP. LAWS § 750.520c(1)(c)). Petitioner was sentenced

to 10-to-20 years for the first-degree home invasion conviction, life imprisonment for the

three first-degree criminal sexual conduct convictions, and 10-to-15 years for the

second-degree criminal sexual conduct conviction.

This matter is before the Court on Respondent's motion for summary judgment, in

which he moves the Court to dismiss the petition as untimely. Petitioner filed a response

to the motion asserting that he is innocent of the charges and therefore entitled to equitable

tolling. For the reasons set forth herein, the Court dismisses the petition for failure to

comply with the one-year statute of limitations set forth at 28 U.S.C. § 2244(d). The Court will also deny Petitioner a certificate of appealability and permission to proceed in forma pauperis on appeal.

## I. Procedural History

The charges against Petitioner arose after the home invasion and sexual assault of a legally blind 57-year-old woman occurring on the morning of March 1, 2001.

The evidence at trial indicated that the victim knew Petitioner, a taxi cab driver, because he had previously driven her home from the grocery store and helped her bring the groceries into her house. The victim testified that on the morning of the assault her son left the house at approximately 5:30 a.m., leaving the front door unlocked. Sometime before 6:00 a.m., the victim awoke to find a man standing at her bed. The victim described how she was then repeatedly sexually assaulted.

After the attacker left, the victim called 9-1-1, and police officers arrived at approximately 6:15 a.m. The victim told the officers that she recognized her attacker by her conversations with him during the assault as the cab driver. The victim was taken to a hospital. She was bruised, and an examination of her genitals was consistent with her having been sexually assaulted.

Officers contacted the cab company, and by the victim's physical description of the driver, they were led to Petitioner. Petitioner was then interviewed by police. Petitioner initially denied knowing the victim. Later in the interview he admitted that he knew the victim and had been in her house on the morning of the incident. Petitioner, however, told police that he was there simply to enquire about buying the victim's house and denied that he attacked her.

-2-

The victim's neighbors testified that days before the attack they saw a cab parked down the street from the victim's house, and they saw a man matching Petitioner's appearance skulking around the victim's house.

DNA analysis indicated that biological material found on his clothes matched him. None of the victim's DNA was found on Petitioner, nor was any of Petitioner's DNA found on the victim.

A jail-house informant testified that Petitioner described the attack. The prosecutor asserted that the informant knew details that had not appeared in the newspaper and could only have come from the perpetrator.

Based on the this evidence, a jury found Petitioner guilty of the offense indicated above.

In October of 2001, Petitioner filed an appeal of right in the Michigan Court of Appeals. The Michigan Court of Appeals issued an unpublished opinion affirming his convictions, but remanding the case for resentencing. People v. Powell, No. 237266, 2003 WL 133054, at *1, 4 (Mich. Ct. App. Jan. 3, 2003). Petitioner filed an application for leave to appeal in the Michigan Supreme Court. On June 30, 2003, the Michigan Supreme Court denied Petitioner's application. People v. Powell, 664 N.W.2d 219 (Mich. 2003) (table).

Sometime in 2004, Powell mailed a motion for relief from judgment to the trial court judge, but he did not file a copy with the clerk of the court. Nevertheless, the trial court ordered the prosecutor to respond to the motion.

On July 22, 2004, the trial court sent Petitioner a letter directing him to file another copy of the motion with the court clerk and serve the prosecutor. On October 7, 204, the prosecutor filed a responsive pleading indicating that it could not answer the motion

because it had never been served with a copy.

Finally, on March 27, 2006, Petitioner re-filed his motion for relief from judgment in the trial court. On April 7, 2006, the trial court issued two orders. The first order denied Powell's 2004 motion for relief from judgment because Powell failed to file that motion with the court clerk and failed to serve it on the prosecutor. The second order directed the prosecutor to respond to Petitioner's motion. After the response was filed, the trial court issued an order denying Petitioner's motion on November 16, 2006.

In January of 2007, Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. On June 4, 2007, the Michigan Court of Appeals denied Petitioner's application in a standard order. Petitioner applied for leave to appeal to the Michigan Supreme Court, but on November 29, 2007, the Michigan Supreme Court denied Petitioner's application. People v. Powell, 741 N.W.2d 337 (Mich. 2007) (table).

On July 31, 2009, Petitioner filed a second motion for relief from judgment. On November 9, 2009, he filed an "amended" motion for relief from judgment. Before the trial court issued an order on this motion, Petitioner filed two more motions for relief from judgment, one on April 14, 2010, based on newly discovered evidence, and the second on April 19, 2010. The trial court denied relief on May 5, 2010.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. On September 30, 2011, the Michigan Court of Appeals dismissed Petitioner's application for lack of jurisdiction pursuant to Michigan Court Rule 6.502(G). Petitioner did not file an application for leave to appeal or a delayed application for leave to appeal in the Michigan Supreme Court.

Sometime between May 5, 2010, and November 15, 2011, Petitioner filed additional

-4-

motions in the trial court, including a motion for DNA testing, a motion for new trial, and a motion for evidentiary hearing for fraud on the court. The trial court denied these motions on November 15, 2011, treating them as successive motions for relief from judgment prohibited  by Rule 6.502(G).

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. On June 21, 2012, the Michigan Court of Appeals dismissed Petitioner's application pursuant to Rule 6.502(G). Petitioner applied for leave to appeal to the Michigan Supreme Court, but on November 20, 2012, the Michigan Supreme Court denied Petitioner's application. People v. Powell, 822 N.W.2d 765 (Mich. 2012) (table).

The habeas petition now before this Court is dated November 8, 2013, and was filed in this Court on November 15, 2013.

## II. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that  the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Sanders v. Freeman, 221 F.3d 846, 851 (6th Cir. 2000). The moving party bears "the burden of showing the absence of a genuine issue as to any material fact." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable fact finder could return a verdict in his or her favor. Sanders, 221 F.3d at 851. The summary judgment rule applies to habeas proceedings. Redmond v. Jackson, 295 F. Supp. 2d 767, 770 (E.D. Mich. 2003).

## III. Discussion

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Absent equitable tolling, a petition for writ of habeas corpus must be dismissed where it has not been filed before the limitations period expires. See 28 U.S.C. § 2244(d)(1); Allen v. Yukins, 366 F.3d 396, 401 (6th Cir. 2004).

The statute of limitations began to run in this case when Petitioner's conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "Direct review," for purposes of subsection 2244(d)(1)(A), concludes when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted. Jimenez v. Quarterman, 555 U.S. 113, 119 (2009). In this case, the expiration of time for seeking direct review was September 28,

2003, 90 days after the Michigan Supreme Court denied Powell's application for leave to appeal on June 30, 2003. Petitioner then had one year, until September 28, 2004, to file his petition, or to instead properly file an application for state postconviction or other collateral review, which would toll the one-year statute of limitations period under 28 U.S.C. § 2244(d)(2); see also Duncan v. Walker, 533 U.S. 167, 181-82 (2001).

Petitioner submitted a motion for relief from judgment to the trial judge sometime in 2004. But because he did not serve the prosecutor nor file the motion with the clerk of the court, the motion was not properly filed. The United States Supreme Court held that for purposes of section 2244(d)(2), "[a]n application is 'filed' when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8 (2000). The Supreme Court held that an "application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office into which it must be lodged, and the requisite filing fee." Id. (footnote omitted). Petitioner did not properly file his post-conviction motion in 2004, because he only sent a copy of the motion to the trial judge. The trial court informed Petitioner of his filing error, but Petitioner never corrected it. Therefore, Petitioner's 2004 motion did not toll the statute of limitations. See Evans v. Chavis, 546 U.S. 189, 191 (2006) (citing Carey v. Saffold, 536 U.S. 214 (2002). Petitioner finally properly filed his motion for relief from judgment on March 27, 2006. But that was well after the statute of limitations had already expired on September 28, 2004.

Petitioner does not dispute these calculations. Rather, he argues that the Court should not dismiss his petition because he is actually innocent. In McQuiggin v. Perkins,

U.S.    , 133 S. Ct. 1924, 1931-32, 185 L. Ed. 2d 1019 (2013),  the Supreme Court held that a habeas petitioner is not entitled to equitable tolling of the statute of limitations on the basis of a claim of actual innocence. Id. Instead, the Court ruled that a petitioner who can show actual innocence under the rigorous standard of Schlup v. Delo, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.

In order to making a showing of actual innocence under Schlup, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 133 S. Ct. 1924, 1933, 185 L. Ed. 2d 1019 (quoting Schlup, 513 U.S. at 329) (addressing actual innocence as an exception to procedural default)). "[T]he standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. "[T]o be credible, a gateway claim requires new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." House v. Bell, 547 U.S. 518, 537 (2006) (internal quotation marks omitted). The Court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." Id. (internal quotation marks omitted). "[T]he Schlup standard is demanding and permits review only in the 'extraordinary' case." House, 547 U.S. at 538 (quoting Schlup, 513 U.S. at 327) (internal quotation omitted).

After considering Petitioner's proffered evidence of innocence, the Court finds that Petitioner has failed to establish that it is more likely than not that no reasonable juror would have convicted him. Petitioner's evidence consists of: (1) two Michigan State Police forensic reports prepared by Michigan State Police technicians Melinda Jackson and Heather Spillane in 2001 regarding DNA testing; (2) portions of the trial transcript; (3) Sterling Heights Police Reports dated March 1, 2001, March 2, 2001, and August 7, 2001; (4) letters from Petitioner's appellate counsel and an attorney from the Innocence Project; and (5) a 2011 pleading from a prosecutor indicating that the physical evidence in Petitioner's case was destroyed in 2007.

The first three proffered items are not newly discovered, nor do they show that Petitioner is innocent. The fact that evidence was tested for DNA identification was well-known and discussed multiple times during pretrial hearings. On at least three occassions the prosecutor moved to adjourn the trial date for the explicit reason that the testing had not been completed. Finally, at an August 14, 2001, pretrial hearing, the prosecutor stated that the testing had been completed and that the DNA found on the victim belonged to her, and that the DNA found on Petitioner and his items belonged to him. In other words, the testing did not inculpate Petitioner.

Given these results, defense counsel moved for Petitioner to be released on bond pending trial, and he moved to exclude the jailhouse informant's testimony on the grounds that, suspiciously, he was not listed as a witness until after the negative DNA results came back. At trial, a centerpiece of Petitioner's defense was the lack of DNA evidence inculpating Petitioner and the suspicious last-minute circumstances of the informant's testimony. Accordingly, nothing in Petitioner's first three proffered items is newly

discovered. Rather, it was used by defense counsel to support Petitioner's defense.

Moreover, these items do not support Petitioner's claim of actual innocence. Petitioner's claim boils down to a mistaken interpretation of Spillane's report. The report states:

> 1. The DNA profile detected from the bloodstains from the suspect's boxer shorts, the semen from the jacket and the genitali swabs matches Phillip Powell.
>
> 2. Additional minor DNA types were detected from the semen from the jacket that are from an unknown donor.
>
> 3. Geraldine Sepulveda is excluded as a source of the DNA types detected from the submitted evidentiary items.

Petitioner concludes from the last line that a third person's DNA must have been found on the victim since she was excluded as a source. This is incorrect. The beginning of the report states that Spillane tested "known bloodstains" from both the victim and Petitioner used to identify the source of the DNA from "bloodstains from suspect's boxer shorts, semen from jacket in suspect vehicle, and swabs from suspect genitalia." In other words, the "submitted evidentiary items" referred to in the report were all items associated with Petitioner, not the victim. Contrary to Petitioner's assertion, while there was DNA found on Petitioner from a third party, the report does not indicate that a third party was the source of any DNA found on the victim. Petitioner's reliance on the trial transcript, police reports, the other DNA report, the letters from his attorneys, and the pleadings of the prosecutor, are all based on his misreading of Spillane's report. None of these items support his innocence claim, nor do they support his claim that exculpatory evidence was suppressed or destroyed.

Moreover, Petitioner's theory of evidence is outlandish. He claims that a third person

-10-

might have coincidentally committed the assault immediately after he left the victim's house. In fact, the assault occurred sometime after 5:30 a.m., and the police were dispatched under an hour later at 6:12 a.m. Petitioner admitted to police that he was at the victim's house that morning. Whether or not the victim correctly identified Petitioner as her attacker, the fact remains that she described a single person–not two–as being at her house that morning. There is simply no evidentiary support for Petitioner's claim that another person committed the crime. More specifically, Petitioner has not come close to demonstrating that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. Accordingly, Petitioner has failed to demonstrate that a fundamental miscarriage of justice will occur if his petition is dismissed as untimely.

Lastly, Petitioner's motion to expand the record, which seeks for the Court to include the above listed items as part of the record, is denied as moot. The Court considered the items in evaluating Petitioner's innocence claim.

## IV.  Conclusion

Before Petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). Having undertaken the requisite review, the court concludes that jurists of reason

-11-

could debate Petitioner's argument that the statute of limitations does not apply to his petition because he is actually innocent. The Court also will also deny Petitioner permission to appeal this decision in forma pauperis.

### V. Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and permission to appeal in forma pauperis are **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion to expand the record is **DENIED.**

Date:   September 23, 2014                 s/Marianne O. Battani
                                           MARIANNE O. BATTANI
                                           United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 23, 2014.

                                           s/ Kay Doaks
                                           Case Manager